United States District Court
Southern District of Texas
**ENTERED**
October 30, 2024
Nathan Ochsner, Clerk

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, | § | |
| as subrogee of Logicalis Group Storage, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:22-cv-2687 |
| | § | |
| RHENUS LOGISTICS LLC f/k/a RHENUS | § | |
| FREIGHT LOGISTICS (MIA) LLC, and | § | |
| EVOLUTION LOGISTICS CORPORATION, | § | |
| | § | |
| *Defendants.* | § | |

### ORDER

Pending before this Court are ACE American Insurance Company's ("Plaintiff") Motion for Summary Judgment, (Doc. No. 30), and Brief in Support, (Doc. No. 31). Rhenus Logistics LLC ("Defendant") responded in opposition. (Doc. No. 32). Plaintiff did not file a reply, and the time to do so has passed, making the motion ripe for ruling. Having considered the motion and the relevant pleadings, the Court **DENIES** the motion. (Doc. No. 30).

### I.   Background

This case arises from a fire on Interstate Highway 10. Defendant was engaged by Logicalis Group Storage to arrange the transportation of telecommunications equipment from Houston, Texas, to Miami, Florida. (Doc. No. 32 at 2). The cargo, however, did not make it far, and "the entire load of telecommunications equipment was deemed a complete loss" when the trailer transporting it caught fire in east Harris County, Texas. (Doc. No. 18 at 3). For that loss, Logicalis tendered a claim to Plaintiff, who paid out $641,864.47. (*Id.*). Now, Plaintiff, as subrogee of Logicalis, seeks to hold Defendant responsible for that amount under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, *et seq.* (*Id.* at 4).

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. Analysis

### A. Timeliness of the Motion

To start, Defendant argues that Plaintiff's motion is untimely. The motion was filed on September 17, 2024. Three court-ordered deadlines are relevant: (1) Judge Sheldon's scheduling

order, setting the dispositive motions deadline as July 3, 2023, (Doc. No. 17); (2) this Court's first amended scheduling order, pushing the pretrial conference to June 10, 2024, (Doc. No. 27); and (3) the Court's second amended scheduling order, resetting the pretrial conference on November 25, 2024, (Doc. No. 29).

Based on these deadlines, Defendant is correct that the motion was untimely. This Court's Rules of Civil Procedure states that "[u]nless otherwise indicated in the Scheduling Order entered at the Initial Pretrial Conference, dispositive motions must be filed at least 120 days . . . before the date set for final pretrial conference." HANEN, J., CIV. P. 7(B). The Court's amended scheduling orders did not provide any extensions on the dispositive motion deadline set in the initial order by Judge Sheldon. Even if those orders did tacitly modify the initial deadline—which the parties should not infer—120 days before the new final pretrial conference date was July 28, 2024. Plaintiff missed both the initial, actual deadline and any other possible deadline. Thus, Plaintiff's motion is late.

Nevertheless, as the case is set to face trial soon, the Court finds it proper to rule on this dispositive motion as it may focus the parties on certain issues of concern. Nevertheless, the parties are warned that in the future they need to heed the Court's orders (scheduling or otherwise), the Local Rules, and the Rules of Civil Procedure.

### B. Merits of the Motion—the Carmack Amendment

The Carmack Amendment to the Interstate Commerce Act provides, in part, "[a] carrier . . . [is] liable . . . for the actual loss or injury to the property caused by (A) the receiving carrier, (B) delivering carrier, or (C) another carrier over whose line or route the property is transported. § 14706(a)(1). It also provides various definitions. A "carrier" means a "motor carrier, a water carrier, and a freight forwarder." *Id.* § 13102(4). A "freight forwarder" means:

3

a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business—

    (A)    assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;

    (B)    assumes responsibility for the transportation from the place of receipt to the place of destination; and

    (C)    uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

*Id.* § 13102(8). Finally, as relevant here, a "broker" means:

a person, *other than a motor carrier or an employee or agent of a motor carrier*, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

*Id.* § 13102(2) (emphasis added).

Plaintiff's motion contends that Defendant is liable under the Carmack Amendment. To fall under that statute, Defendant must be a carrier, which includes a freight forwarder. If, however, Defendant is a broker, it is not liable under the Carmack Amendment. Thus, the Court must resolve Defendant's status in these circumstances. The parties do not dispute that Defendant "made arrangements on behalf of the customers" to transport various pieces of cargo. (Doc. No. 32 at 2). Since the definition of "broker" is one of exclusion—partially defining it as what it is not—to survive summary judgment, Defendant must raise a genuine issue of material fact that it was not a freight forwarder. Notably, the final prong of the definition of "freight forwarder"—whether Defendant used a carrier for any part of the transportation—is not in dispute. *See* (*Id.* at 9). The remaining elements are analyzed in turn.

### i. Defendant held itself out to the general public to provide transportation.

The first statutory prong of a "freight forwarder" asks whether Defendant held "itself out to the general public . . . to provide transportation of property for compensation." Defendant clearly

did. Indeed, the record is replete with instances of Defendant holding itself out to the public as a carrier. Its website states that "Rhenus develops transport solutions on all routes," offers "efficient, reliable, and safe door-to-door transportation of your goods," and is a "partner for international freight forwarding and transportation." (Doc. No. 31-2 at 1–2). Defendant's own witness acknowledged that the "nature of the business of Rhenus" is one of "service agent, freight forwarder." (Doc. No. 31-1 at 7:7–8). Defendant admits as much but argues only that "with regard to the Cargo" at issue here, it was acting as a broker. (Doc. No. 32 at 6). The statute, however, asks how Defendant held itself out to the *general public*, not in a specific transaction. *See* § 13102(8). Thus, Defendant failed to raise fact issues as to this prong.

### ii. Fact issue exists as to whether Defendant assembles or consolidates, or provides for assembling and consolidating of, shipments and provides for break-bulk and distribution of the shipment.

A genuine issue of material fact exists as to the second prong. It asks whether Defendant assembles or consolidates, or provides for such of, shipments and provides for break-bulk and distribution of the shipment. § 13102(8)(A). Consolidation here means "consolidat[ing] less than carload freight into carloads for shipment by rail, truck, or water." *Chicago, Milwaukee, St. P. & P.R. Co. v. Acme Fast Freight*, 336 U.S. 465, 467 (1949). "Break-bulk and distribution" describes a situation when "the carload [of cargo] is broken up; some shipments may be distributed locally, some sent by trucks to off-line destinations, and some consolidated into carloads for reshipment to further break-bulk points." *Id.*

Here, Plaintiff argues that Defendant agreed to break-bulk and distribute shipments. (Doc. No. 31 at 10). Plaintiff points to the deposition of Defendant's witness, who testified that "Freight

Logistics[]¹ will repackage or prepare for international shipment as necessary." (Doc. No. 31-1 at 38:18–21) (interpreting a Logistics Services Agreement (Doc. No. 31-6)). That statement, however, was interpreting just *one* Logistics Services Agreement, *see* (*Id.* at 38:3–40:10), and, according to Defendant, there were "at least seven (7) and not just simply (1) [sic] logistics service[s] agreement that existed between Logicalis-related entities and Rhenus," (Doc. No. 32 at 6); *see also* (Doc. No. 32-2) (the Logistics Services Agreements). Per Defendant, these agreements served to "compartmentalize the liability treatment of the handling of the Cargo at various [handling] stages." (*Id.* at 8). Thus, the argument goes, interpretation of one contract that deals with break-bulking and distribution may not resolve the fact issues regarding transportation under another contract.

The parties do not make clear to the Court which one, if any, of these contracts governed their relationship in the leg of the journey at issue. Nevertheless, these contracts raise fact issues as to Defendant's status because they specifically disclaim Defendant's status as a freight forwarder and, instead, repeatedly references unspecified freight forwarders as third parties to the contract. For example, § 1 reads, in part:

> The parties hereto acknowledge and agree that Freight Logistics will act only as a logistics provider *and not as a freight forwarder or carrier* and, as such, is not responsible for the actual movement of Goods to or from its Warehouse . . . except as otherwise provided in this Agreement.

(Doc. No. 31-6 at § 1) (emphasis added); *see also* (*id.* § 4.3(d)) ("The parties hereby acknowledge and agree that Freight Logistics is a warehouseman."); (*id.* § 3) ("Freight Logistics is hereby appointed as Logicalis' agent in the U.S. with express authority to coordinate inbound and outbound shipments of Goods, and to take all actions associated therewith, including . . .

---

¹ The deposition and other exhibits refer to "Freight Logistics, Inc.," but Freight was acquired by Rhenus. (Doc. No. 31-1 at 8:10–12) ("Q: So you were with Freight Logistics and it then was acquired by Rhenus? A: Correct."). The parties do not dispute that Rhenus stands in place of Freight Logistics.

*communicating and contracting with freight forwarders*." (Emphasis added)); (*id.* § 4.3(b)) (same); (*id.* § 4.5(c)(i)) (same); (*id.* § 4.3(f)) (requiring Defendant to notify Logicalis and the freight forwarder of failed inspections of goods). The other contracts state the same. *See* (Doc. No. 32-2).

As Plaintiff's own cited case states, "[l]ooking to how the parties were described in the documents that governed the relationship . . . has tremendous probative value" in determining Defendant's role and identity in the transaction. *Zumba Fitness, LLC v. ABF Logistics, Inc.*, No. 2:15-cv-2151, 2016 WL 4544355, at *7 (W.D. Ark. Aug. 30, 2016). Here, these contractual provisions raise genuine issues of material fact as to Defendant's role and identity.

### iii. A genuine issue of fact exists as to whether Defendant took responsibility for the transportation from the place of receipt to the destination.

If a fact issue regarding the second prong were not enough, a genuine issue of fact also exists as to the third prong that requires Defendant to take responsibility for the transportation of the goods. They key is whether Defendant "accepted and legally bound [itself] to transport" the shipment. 49 C.F.R. § 371.2(a). The underlying rationale is that "when a party holds itself out as the party responsible for the care and delivery of another's property, it cannot outsource its contractual responsibility by outsourcing the care and delivery it agreed to provide." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1301 (11th Cir. 2018). Thus, the "operative inquiry is this: pursuant to the parties' agreement, with whom did the shipper entrust the cargo?" *Id.* at 1302.

Plaintiff's points to four pieces of summary-judgment evidence: (1) the deposition transcript of Defendant's witness; (2) a claim form submitted by Defendant; (3) the Bill of Lading; and (4) Defendant's agreement with Evolution, the broker–carrier for this shipment. Viewed in the light most favorable to the nonmovant, these pieces of evidence raise fact issues as to Defendant's status.

7

First, Defendant's witness stated in his deposition that it was "our [Defendant's] responsibility is to bring the cargo to Miami." (Doc. No. 31-1 at 42:6–7). To Plaintiff, this is Defendant admitting its legal responsibility. While it may be probative or even highly so, the Court finds the testimony to be less than conclusive. The word "responsible" carries many meanings. *See Responsible*, MERRIAM-WEBSTER.COM DICTIONARY (1a: "liable to be called on to answer"; 1b: "being the cause or explanation"; 1c: "liable to legal review or in case of fault to penalties"). [2] A broker, not a carrier, might still be "the cause or explanation" for the transportation of the cargo. *See* § 13102(2) Moreover, the witness was a domestic transportation manager, not a lawyer. (Doc. No. 31-1 at 6:25–7:1). The Court declines to impute on the testimony of a non-lawyer the legal weight Plaintiff seeks—that Defendant was *legally* responsible under the Carmack Amendment. The witness could have just as easily meant Defendant's task was to bring the shipment to Miami by arranging transportation, which it would be if Defendant was indeed a broker.

Moreover, Defendant's witness specifically denies that Defendant was a freight forwarder. Instead, he testified repeatedly that Defendant is "a service agent for Logicalis brand." (Doc. No. 31-1 at 16:19); *see also* (*id.* at 26:13–14) (same), (*id.* at 31:9–10) (same), (*id.* at 41:25–42:7) (same), (*id.* at 46:5) (same). These repeated assertions in the record by Defendant's witness raise genuine issues of fact as to whether Defendant was a freight broker or a service agent in this transaction.

Second, Plaintiff argues that the fact that Defendant submitted the claim form on behalf of Logicalis meant Defendant was responsible for the transport. True, the form states that Defendant is the claimant, which may lend support to Plaintiff's claim that Defendant had responsibility. (Doc. No. 31-5). What it also states, however, is that Defendant is the "consignee (whom shipped

---

[2] Available at https://www.merriam-webster.com/dictionary/responsible, (last visited Oct. 21, 2024).

to)." (*Id.*) Read in the light most favorable to Defendant, the claim form shows that Defendant submitted it because it was the recipient—not a carrier or a freight forwarder—that never received the promised shipment.

Third, Plaintiff also contends that, because the Bill of Lading bears a Freight Logistics logo, Defendant was responsible for the shipment, and thus, was a forwarder. The Bill of Lading does bear Defendant's logo, but it is silent as to Defendant's status, other than that the shipment must be delivered to its warehouse. (Doc. No. 31-4). That is entirely consistent with its function as a warehouseman, as agreed to by the parties in the Logistics Services Agreements. (Doc. No. 31-6); (Doc. No. 32-2). Therefore, the presence of the logo on the Bill of Lading here, without more, does not resolve genuine fact issues as to this element.

Fourth and last, Plaintiff points to Defendant's agreement with Evolution.[3] In it, Evolution agrees to serve as broker and acknowledges that "double brokering" is prohibited. (Doc. No. 31-4). If Evolution is a broker, and the agreement with Defendant prohibits "double brokering," then, Plaintiff contends, Defendant must not be a broker and, consequently, must be a carrier. (Doc. No. 31 at 14).

In response, Defendant argues that, whatever the agreement prohibited *downstream* from Defendant, it does not speak to Defendant's ability to be a broker *upstream* from the agreement. (Doc. No. 32 at 9). Defendant is correct that the agreement is silent on its upstream effect, and thus, Plaintiff's argument based upon this point does not carry the day.

---

[3] Evolution, once a party to this suit, was dismissed by Plaintiff in Plaintiff's amended complaint. *See* (Doc. No. 18).

## IV. Conclusion

"The difference between a carrier and a broker is often blurry." *Morales v. OK Trans, Inc.*, No. 2:19-cv-94, 2023 WL 2495065, at *2 (S.D. Tex. Jan. 3, 2023). As such, "[t]he inquiry is fact-intensive and often not well-suited for summary judgment." *Id.* Here, Plaintiff has failed to show as a matter of law that this case deviates from that norm. The Court **DENIES** Plaintiff's Motion for Summary Judgment. (Doc. No. 30).

Signed on this 30th day of October 2024.

Andrew S. Hanen
United States District Judge